## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| SHIBUMI SHADE, INC. | |
| Plaintiff, | Civil Action No: 6:24-cv-00297 |
| v. | |
| NB SHADES, LLC | **JURY TRIAL DEMANDED** |
| Defendant. | |

### PLAINTIFF SHIBUMI SHADE, INC.'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Shibumi Shade, Inc. ("Shibumi Shade" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendant NB Shades, LLC ("NB Shades"), and, in support thereof, allege as follows:

### THE PARTIES

1.      Plaintiff Shibumi Shade is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business located at 4039 Atlantic Avenue Raleigh, NC 27604.

2.      Defendant NB Shades is a limited liability corporation organized and existing under the laws of the State of Florida with its principal office at 225 Myra Street, Neptune Beach, Florida 32266.  Defendant is registered to do business in Texas and can be served with process through the Texas Secretary of State.

### JURISDICTION AND VENUE

3.      This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. § 271 and for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a).

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, including 35 U.S.C. § 1 *et seq*.

5.      This Court has personal jurisdiction over Defendant, and venue is proper in this District, because Defendant has committed acts of infringement in this District by making, using, selling, offering for sale, or importing infringing goods, including the Sunsail Shade product, within the District, and Defendant has regular and established places of business located in the State of Texas and within this District including at 13701 Ranch Road, Georgetown, TX 78633, the facility where its inventory of infringing goods is held and from which its infringing goods are shipped to customers within the state of Texas and throughout the United States.

6.      Venue as to Defendant is thus proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## FACTS

### A.      History of Shibumi Shade

7.      Plaintiff was founded in 2016 by two brothers and a longtime friend who grew up visiting Emerald Isle, North Carolina every summer.  The founders recognized the problems with traditional beach umbrellas, which were flimsy, bulky, and difficult to assemble and set out to create a new design that would be both lightweight and easy to assemble in 2015.  The founders worked for more than a year out of their home to perfect their design for the ideal beach shade before formally launching the Shibumi Shade in 2016.

8.      Today, the Shibumi Shade is used and sold throughout the United States and has gained widespread recognition for its superior design and high quality of its products, which are sold through its website, www.shibumishade.com, through Amazon.com, and at select retail locations throughout the United States, including 25 within the state of Texas.

9.      As the Shibumi Shade's popularity grew, the founders set out to protect their designs and intellectual property.  Plaintiff makes every attempt to protect its intellectual property rights, to protect its reputation, and to protect its customers from confusion in the marketplace.  To that end, Plaintiff has obtained multiple patents to date, including U.S. Patent No. 11,946,273 (the "'273 Patent"), and U.S. Patent No. 11,970,876 (the "'876 Patent") (collectively the "Patents-in-Suit"), among many other issued and pending applications.

10.      Plaintiff owns all right, title, and interest in and to the Patents-in-Suit.

11.      The Shibumi Shade is easily visible and instantly recognizable when in use by beachgoers.  The Shibumi Shade has become a beach staple and can be seen lined up on the beach for miles during the summer.  The Shibumi Shade has even been featured in prominent newspapers and magazines, including, The New York Times, The Wall Street Journal, Forbes, Inc., USA Today, Travel + Leisure, New York Magazine, Good Housekeeping, People, GQ, Garden & Gun, CNET, and on TV shows. Exemplary photographs of the Shibumi Shade and demonstrating its prolific use by consumers are below.









12.     Through the release of its Sunsail Shade product ("Sunsail Shade" or "Accused Product"), Defendant unlawfully copied Plaintiff's innovations in an effort to unfairly compete with Plaintiff.  After initially releasing a version of the Sunsail Shade that infringed other of Shibumi Shade's intellectual property, in 2024 Defendants released modified versions of the Sunsail Shade that form the basis of this action.  Defendant has imported, manufactured, used, distributed, sold, or offered to sell the Accused Product in the United States, including within the State of Texas and within this District.

13.     Defendant describes and provides photos of the Accused Product on its website at www.sunsailshades.com.  A copy of the Defendant's website advertising the Accused Product and the corresponding photos (as accessed on May 30, 2024) is attached hereto and incorporated herein by reference as Exhibit A.  Defendant also sells the Accused Product on Amazon, on Walmart.com, and through other social media channels.

**B.    Defendant's Infringement of the '273 Patent**

14.    The '273 Patent, entitled "SHADING SYSTEM AND METHOD OF USE," was duly and legally issued on April 2, 2024 to Dane Brooks Barnes, Alexander Griffith Slater, and Scott Christian Barnes.   A true and accurate copy of the '273 Patent is attached hereto and incorporated herein by reference as Exhibit B.

15.    The Accused Product infringes one or more claims of the '273 Patent, including at least each and every element of Claim 6 either literally or under the doctrine of equivalents, as set forth below and in the claim chart attached as Exhibit C.

16.    Claim 6 of the '273 Patent recites:

1. A system for providing shade onto a surface, the system comprising:

a frame defined by plurality of sections and comprising an aligning component extending through at least a portion of the sections, each of the plurality of sections having one or both of a male end and a female end making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration;

a canopy defining a plurality of coupled sections extending between a first end forming a suspension end of the canopy and a second end forming an opposing trailing end of the canopy, the suspension end of the canopy including a single fastener that engages the canopy with the frame and that secures the canopy in the position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supported by the frame and the trailing end is totally supported by wind in a first configuration for providing shade to the surface,

6

wherein the single fastener comprises a loop extending at least partially through a length of suspension end of the canopy from the left end to the right end; and

a container capable of housing and transporting the components of the system therein.

17.     The Accused Product either literally or equivalently contains a system for providing shade onto a surface.  *See* Ex. C at C-1.

18.      The system of the Accused Product either literally or equivalently comprises a frame defined by plurality of sections and comprising an aligning component extending through at least a portion of the sections.  *See* Ex. C at C-2.

19.     Each of the plurality of sections of the frame of the Accused Product either literally or equivalently has one or both of a male end and a female end making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration.  *See* Ex. F at F-3.

20.     The system of the Accused Product either literally or equivalently comprises a canopy defining a plurality of coupled sections extending between a first end forming a suspension end of the canopy and a second end forming an opposing trailing end of the canopy. *See* Ex. C at C-4.

21.     The suspension end of the canopy of the Accused Product either literally or equivalently includes a single fastener that engages the canopy with the frame and that secures the canopy in the position relative to the frame.  *See* Ex. C at C-5.

22.     The trailing end of the canopy of the Accused Product is either literally or equivalently spaced apart from the frame in the supporting configuration such that the canopy is supported by the frame and the trailing end is totally supported by wind in a first configuration for providing shade to the surface. *See* Ex. C at C-6.

23.     The single fastener of the Accused Product either literally or equivalently comprises a loop extending at least partially through a length of suspension end of the canopy from the left end to the right end. *See* Ex. C at C-7.

24.     The system of the Accused Product either literally or equivalently comprises a container capable of housing and transporting the components of the system therein. *See* Ex. C at C-7.

**C.     Defendant's Infringement of the '876 Patent**

25.     The '876 Patent, entitled "SHADING SYSTEM AND METHOD OF USE," was duly and legally issued on April 30, 2024 to Dane Brooks Barnes, Alexander Griffith Slater, and Scott Christian Barnes.   A true and accurate copy of the '876 Patent is attached hereto and incorporated herein by reference as Exhibit D.

26.     The Accused Product infringes one or more claims of the '876 Patent, including at least each and every element of Claim 1 either literally or under the doctrine of equivalents, as set forth below and in the claim chart attached as Exhibit E.

27.     Claim 1 of the '876 Patent recites:

1. A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a sup-porting configuration, the sections including:

a first section defining a left end of the frame engaged with the surface;

a last section defining a right end of the frame engaged with the surface; and

one or more adjacent sections coupled into alignment and engaged between the first section and the last section,

the one or more adjacent sections addition-ally comprising at least one aligning component affixed to one or more of the adjacent sections of the frame and providing supporting tension to the align-ment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration,

the adjacent sections being con-figured to engage between the first section and the last section in the supporting configuration;

a canopy extending between a first end and an second end,

the first end of the canopy defining a suspension end capable of being engaged with the frame about the one or more adjacent sections of the frame,

wherein the second end of the canopy defines a trailing end spaced apart from the frame in the supporting configuration such that the first end of the canopy is supportable by the frame and the trailing end of the canopy is totally supported by wind in a first configuration for providing shade to the surface; and

a loop on the suspension end of the canopy and configured for accepting a portion of the frame therethrough for engaging the canopy with the frame,

the loop being the only fastener securing the canopy into position relative to the frame.

28.    The Accused Product either literally or equivalently contains a system for providing shade onto a surface.  *See* Ex. E at E-1.

29.    The system of the Accused Product either literally or equivalently comprises a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration.  *See* Ex. E at E-2.

30.    The frame of the Accused Product either literally or equivalently comprises a first section defining a right end of the frame engaged with the surface.  *See* Ex. E at E-3.

31.    The frame of the Accused Product either literally or equivalently comprises one or more adjacent sections coupled into alignment and engaged between the first section and the last section.  *See* Ex. E at E-3.

32.    The one or more adjacent sections of the Accused Product either literally or equivalently comprise at least one aligning component affixed to one or more of the adjacent sections of the frame and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration.  *See* Ex. E at E-4.

33.    The adjacent sections of the Accused Product are either literally or equivalently configured to engage between the first section and the last section in the supporting configuration.  *See* Ex. E at E-5.

34.    The system of the Accused Product either literally or equivalently comprises a canopy extending between a first end and an second end.  *See* Ex. E at E-5.

35.    The canopy of the Accused Product either literally or equivalently includes a first end of the canopy defining a suspension end capable of being engaged with the frame about the one or more adjacent sections of the frame.  *See* Ex. E at E-6.

36.     The second end of the canopy of the Accused Product either literally or equivalently defines a trailing end spaced apart from the frame in the supporting configuration such that the first end of the canopy is supportable by the frame and the trailing end of the canopy is totally supported by wind in a first configuration for providing shade to the surface. *See* Ex. E at E-6.

37.     The system of the Accused Product either literally or equivalently comprises a loop on the suspension end of the canopy and configured or accepting a portion of the frame therethrough for engaging the canopy with the frame, the loop being the only fastener securing the canopy into position relative to the frame. *See* Ex. E at E-7.

38.     Defendant has purposefully advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and intend to continue to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import products to directly compete with Plaintiff that violate Plaintiff's rights, including Plaintiff's patent rights.

**D.     Defendant's Notice of the Patents-in-Suit**

39.     On March 21, 2024, counsel for Plaintiff sent a letter to Defendant's counsel notifying Defendant that the product infringed one or more claims of the soon-to-issued '273 and '876 Patents. Plaintiff's letter requested that Defendant respond to its allegations of infringement and confirm its intention to cease selling the Sunsail Shade version at issue by no later than March 28, 2024.

40.     Counsel for Defendant responded on April 5, 2024, but Defendant did not agree to cease infringement.  In later correspondence on April 30, 2024, counsel for Defendant stated that Defendant had redesigned the product and would begin selling the current product on May 3, 2024.

41.     Counsel for Plaintiff responded on May 14, 2024, after inspecting the "new" Sunsail Shade, reiterating its position that Defendant infringes one or more claims of the '273 and '876 Patents.  Plaintiff again asked Defendant to cease selling the Accused Product. On May 28, 2024, Defendant responded but refused to cease its infringement.

<u>**COUNT I – INFRINGEMENT OF THE '273 PATENT**</u>

42.     Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs, as if stated fully herein.

43.     Plaintiff is the owner of the '273 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '273 Patent against infringers, and to collect damages for all relevant times.

44.     Defendant has, either alone or in concert, directly infringed and continues to infringe the '273 Patent, either literally or through the doctrine of equivalents, by making, using, importing, supplying, distributing, selling and/or offering for sale the Sunsail Shade within the United States, in violation of 35 U.S.C. § 271(a).

45.     Defendant likewise has induced infringement of the '273 Patent in violation of 35 U.S.C. § 271(b).  Defendant actively encourages its customers, by and through its sales and marketing efforts, to directly infringe the '273 Patent by using the Accused Products within the United States.  *See* Ex. A (including at video entitled "How to Setup Your Sunsail Shade").

46.     Upon information and belief, Defendant has made and continues to make unlawful gains and profits from its infringement of the '273 Patent.

47.     At least as early as March 21, 2024, Defendant has been on notice and has had knowledge of the '273 Patent and of Plaintiff's allegations of infringement.  Alternatively, Defendant has been on notice since the '273 Patent issued on April 2, 2024.  Defendant's infringement of the '273 Patent has been willful and deliberate at least since this date.

48.     Plaintiff has been damaged and irreparably harmed by Defendant's infringement of the '273 Patent for which Plaintiff is entitled to relief under 35 U.S.C. § 284.  Plaintiff will continue to suffer damages and irreparable harm unless Defendant is enjoined preliminarily and permanently by this Court from continuing its infringement.

<u>**COUNT II – INFRINGEMENT OF THE '876 PATENT**</u>

49.     Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 to 41, as if stated fully herein.

50.     Plaintiff is the owner of the '876 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '876 Patent against infringers, and to collect damages for all relevant times.

51.     Defendant has, either alone or in concert, directly infringed and continues to infringe the '876 Patent, either literally or through the doctrine of equivalents, by making, using, importing, supplying, distributing, selling and/or offering for sale the Sunsail Shade within the United States, in violation of 35 U.S.C. § 271(a).

52.     Defendant likewise has induced infringement of the '876 Patent in violation of 35 U.S.C. § 271(b).  Defendant actively encourages its customers, by and through its sales and marketing efforts, to directly infringe the '876 Patent by using the Accused Products within the United States.  *See* Ex. A (including at video entitled "How to Setup Your Sunsail Shade").

53.     Upon information and belief, Defendant has made and continues to make unlawful gains and profits from its infringement of the '876 Patent.

54.     At least as early as March 21, 2024, Defendant has been on notice and has had knowledge of the '876 Patent and of Plaintiff's allegations of infringement.  Alternatively, Defendant has been on notice since the '876 Patent issued on April 30, 2024.  Defendant's infringement of the '876 Patent has been willful and deliberate at least since this date.

55.     Plaintiff has been damaged and irreparably harmed by Defendant's infringement of the '876 Patent for which Plaintiff is entitled to relief under 35 U.S.C. § 284.  Plaintiff will continue to suffer damages and irreparable harm unless Defendant is enjoined preliminarily and permanently by this Court from continuing its infringement.

## ATTORNEYS' FEES

56.     Pursuant to 35 U.S.C. § 285, Plaintiff seeks reasonable attorneys' fees in this case.

## JURY DEMAND

57.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury of any issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Shibumi respectfully seeks the following relief:

A.     that Defendant be declared to have directly infringed one or more of the claims of the '273 and '876 Patents under 35 U.S.C. § 271(a);

B.     that the making, using, offering to sell, and/or selling within the United States, and/or importation into the United States of the Accused Product will constitute an infringement of the '273 and '876 Patents;

C.     that the Court issue preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283 against the continuing infringement of the claims of the '273 and '876 Patents by Defendant, its officers, agents, employees, attorneys, representatives, and all others acting in concert therewith, including any retail outlets carrying the Accused Product;

D.     that the Court order an accounting for all monies received by or on behalf of Defendant and all damages sustained by Plaintiff as a result of Defendant's aforementioned infringements, that such monies and damages be awarded to Plaintiff, and that interest and costs be assessed against Defendant pursuant to 35 U.S.C. § 284 and 35 U.S.C. § 154(d);

E.    that the Court declare that Defendant's infringement was and is willful from the time it became aware of the infringing nature of its product and award treble damages for the period of such willful infringement of the '273 and '876 Patents, pursuant to 35 U.S.C. § 284;

F.    that the Court declare this an exceptional case and order that Defendant pay to Plaintiff its reasonable attorneys' fees and costs, pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117;

G.    that the Court award such further and other relief to Plaintiff as the Court deems just, together with its costs and disbursements in this action.

Dated: May 30, 2024                           Respectfully submitted,

*/s/ Eric H. Findlay*
Eric H. Findlay
Texas Bar No. 00789886
Roger Brian Craft
Texas Bar No. 04972020
FINDLAY CRAFT P.C.
7270 Crosswater Avenue, Suite B
Tyler, TX 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

Preston H. Heard (*pro hac vice* to be filed)
Georgia Bar No. 476319
Christine H. Dupriest (*pro hac vice* to be filed)
Georgia Bar No. 874494
WOMBLE BOND DICKINSON (US) LLP
271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 862-7527
Facsimile: (404) 879-2966
Preston.heard@wbd-us.com
Christine.Dupriest@wbd-us.com

*Attorneys for Plaintiff Shibumi Shade, Inc.*

15