

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **SHIBUMI SHADE, INC.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **Case No. WA-24-CV-0297-AM** |
| | § | |
| **NB SHADES, LLC,** | § | |
| **Defendant.** | § | |
| | § | |

## ORDER

Pending before the Court is Defendant NB Shades, LLC's ("NB Shades") Motion to Dismiss or alternatively Transfer Case for Improper Venue. (ECF No. 32.) Following the Defendant's motion, the Plaintiff and the Defendant now jointly move to transfer venue pursuant to 28 U.S.C. § 1404(a). (ECF No. 46.) Upon careful consideration of the filings and relevant law, the Court **GRANTS** the joint Motion to Transfer Venue. (ECF No. 46.)

## I.    BACKGROUND

The Plaintiff, Shibumi Shade, Inc. ("Shibumi Shade") filed the Complaint on May 30, 2024, asserting claims of patent infringement against NB Shades relating to Shibumi Shade's beach shade product.[1] (ECF No. 1.) The Complaint identifies NB Shades as a resident of Florida and alleged venue is proper because NB Shades makes, uses, sells, offers for sale, or imports infringing goods within the Western District of Texas. (*Id.* at 2.) Furthermore, the Complaint alleges that NB Shades has a regular and established places of business located in the Western District of Texas. (*Id.*) In support of these allegations, Shibumi Shade alleged NB Shades stores

---

[1] Shibumi Shade's listed patents include: U.S. Patent No. 11,946,273 (the "273 Patent") and U.S. Patent No 11,970,876 (the "876 Patent"). (ECF No. 1 at 3.)

inventory and ships its goods to customers from a facility within the Western District of Texas. (*Id.*)

On August 2, 2024, NB Shades filed a Motion to Dismiss or, alternatively, to Transfer Venue. (ECF No. 7.) In NB Shades' motion, it asserted that venue is improper in the Western District of Texas because it does not reside nor have a regular and established place of business in the district. (*Id.* at 10-11.) In support of this assertion, NB Shades argues

> Any and all executive management, marketing, finance, and any organizational functions of NB Shades are directed from and based out of Florida. Any and all alleged decision making regarding the Sunsail Shade were made by individuals in Florida. NB Shades does not have any office in the WDTX, it does not have any place of business in the WDTX, nor do any employees of NB Shades reside in the WDTX.

(*Id.* at 7.)

Following NB Shades' motion, the parties agreed and jointly moved for leave to conduct expedited venue discovery. (ECF No. 17.) On August 20, 2024, this Court granted the expedited venue discovery motion. (ECF No. 18.) On October 10, 2024, NB Shades filed the First Amended Complaint and joined C.L.O. Company LLC ("C.L.O.") and Bluebonnet Cut & Sew, LLC ("Bluebonnet") as defendants. (ECF No. 24.)

On October 24, 2024, NB Shades filed a second Motion to Dismiss or, alternatively, to Transfer Venue and reasserted its arguments that venue was improper in the Western District of Texas, despite the addition of the new defendants. (ECF No. 32.) NB Shades also filed a Motion for Attorney Fees and Costs [ECF No. 33] alleging that the Plaintiff knew venue was improper, tried to force NB Shades into acquiescing to frivolous claims, and wasted judicial resources with "a purposeful procedural scheme to avoid actually having to answer NB Shades' first motion to transfer or dismiss in this action . . . while simultaneously running up costs on NB Shades." (*Id.* at 6.)

2

On November 5, 2024, and November 11, 2024, Shibumi Shade proceeded to voluntarily dismiss its claims against C.L.O. and Bluebonnet, respectively, pursuant to Rule 41(a)(1)(A)(i). (ECF Nos. 37, 41.)  Thereafter, Shibumi Shade filed a joint motion with NB Shades to transfer venue.  (ECF No. 46.)  The joint motion states NB Shades represented to Shibumi Shade that "C.L.O. and Bluebonnet no longer participate in the manufacture, use, import, sale, or offer for sale," of the disputed beach shade product.  (ECF No. 46 at 2.)  The motion also states the parties

> agree[] (1) to the transfer of this action to the United States District Court for the Middle District of Florida, Jacksonville Division, (2) that the Motion to Dismiss or Transfer and the Motion for Attorneys' Fees shall be withdrawn, and (3) that each party will bear its own costs and fees in connection with the pending motions.

(*Id.*)  Based upon the representations of the parties and the agreements reached in the joint motion, this Court will transfer the cause to the United States District Court for the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. § 1404(a).  (*Id.*)

## II.    LEGAL STANDARD

Venue in patent cases is governed by 28 U.S.C. § 1400(b), which provides: "[a]ny civil action for patent infringement may be brought in the judicial district where (i) the defendant resides, or (ii) where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  Moreover, under 28 U.S.C. § 1404(a), a district court may transfer a patent case for "the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  In reviewing a motion to transfer under section 1404(a), the Federal Circuit applies the law of the regional circuit in which the district court is located — in this case, the Fifth Circuit.  *See In re Samsung Elecs. Co.*, 2 F.4th 1371, 1375 (Fed. Cir. 2021); *In re Apple, Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020); *see also In re TS Tech United States Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) ("Because this

3

petition does not involve substantive issues of patent law, this court applies the laws of the regional circuit in which the district court sits, in this case the Fifth Circuit.").

A motion to transfer is evaluated under a two-step framework established by the language of 28 U.S.C. § 1404(a). *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Generally, a court first determines "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Id.* at 203. However, section 1404(a)'s use of "*or*" indicates that if all parties have consented, then the consented-to judicial district is permissible, regardless if the claim could have been brought there.

Once a court has determined that the claim could have been brought in the district to which transfer is sought or all parties have consented to a judicial district, then the court must determine if the transfer would be "for the convenience of parties and witnesses, and in the interest of justice." 28 U.S.C. § 1404(a); *see Volkswagen I*, 371 F.3d at 203 ("In making a determination of whether a motion to transfer venue is proper, we turn to the language of § 1404(a)."). Convenience and the interest of justice is determined by considering various private and public factors including:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (per curiam) (quotations omitted) (discussing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*")). Only once a court has determined the transfer is for the convenience of the parties and witnesses and in the interest of justice, then the court may grant a motion to transfer venue.

4

### III.    ANALYSIS

Here, the Parties jointly move for transfer of this action to the Jacksonville Division of the Middle District of Florida. (ECF No. 46.) Since all parties consent to the Middle District of Florida, this Court now turns to analyze the private and public interest factors to determine if transfer is for the convenience of parties, witnesses, and in the interest of justice.[2]

**1.  The relative ease of access to sources of proof**

The first factor in the analysis looks to where the documents and physical evidence are stored. *See Volkswagen II*, 545 F.3d at 315; *see also MV3 Partners LLC v. Roku, Inc.*, No. 6:18-CV-00308-ADA, 2019 WL 10981851 (W.D. Tex. June 25, 2019). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple*, 979 F.3d at 1340 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). NB Shades operates solely out of its headquarters in the Middle District of Florida. (ECF No. 32 at 2.) All documents related to the accused product, or other physical evidence relating to the product, are located in the Middle District of Florida. (*Id.* at 24.) Thus, because all of the documents are located in the Middle District of Florida, this factor weighs in favor of transfer.

**2.  The availability of compulsory process to secure the attendance of witnesses**

The second factor considers the court's power to subpoena potential witnesses. A court can only command a person to attend a trial, hearing, or deposition if the proceeding is either

> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

---

[2] Even if the Parties had not consented, this Court finds that Plaintiff could have originally brought this action in the Middle District of Florida. Venue is proper in a patent case in the judicial district where the defendant resides. 28 U.S.C. § 1400(b). Here, NB Shades is a limited liability corporation organized and existing under the laws of the State of Florida, where its principal office is in Neptune Beach, Florida. (ECF No. 24 at 1.) Neptune Beach, Duval County, Florida lies within the Jacksonville Division of the Middle District of Florida. *See Locations*, United States District Court for the Middle District of Florida, https://www.flmd.uscourts.gov/about-court (last visited Nov. 21, 2024) (listing Duval County among the counties served by the Jacksonville Division).

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.

FED. R. CIV. P. 45(c). "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses." *GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-CV-572, 2013 WL 890484 at *21 (E.D. Tex. Jan. 14, 2013). Transfer is greatly favored when the majority of the non-party witnesses reside in the transferee forum. *Id.* The Plaintiff does not contend that this Court has subpoena power over the majority of witnesses; nor does it contend that the Middle District of Florida lacks subpoena power over potential witnesses. While neither party explicitly identifies the potential non-party witnesses, NB Shades asserts "potential witnesses knowledgeable about the product . . . would all be available," in the Middle District of Florida. (ECF No. 32 at 20.) The Western District of Texas far exceeds 100 miles from the Middle District of Florida. If those witnesses were required for a trial, hearing, or deposition in the Western District of Texas, the inconvenience to witnesses in the Middle District of Florida would have to incur substantial expense since it is located more than 100 miles from this Court. Therefore, this factor weighs in favor of transfer.

### 3. The cost of attendance for willing witnesses

The third factor considers willing witnesses and their costs to travel to the venue. The Fifth Circuit set a 100-mile threshold to apply to this factor, stating "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 204-05). "Obvious[ly]" it is more convenient for witnesses to testify closer to their homes and the further away they have to travel "increases the probability for meal and lodging expenses . . . [and]

increases the time which these fact witnesses must be away from their regular employment." *Id.* Therefore, if the proposed venue requires the witnesses to travel less distance than the original venue, then transfer is favored. The Plaintiff does not specifically identify any witnesses. The Defendant's uncontroverted statements are that potential knowledgeable witnesses are available in the Middle District of Florida. (ECF No. 32 at 20.) Moreover, the Defendant's CEO, and sole employee, resides in the Middle District of Florida and would have to travel well over 100 miles to the Western District of Texas for the proceedings. (ECF No. 32, Ex. 1.) Since the Defendant's witnesses are in Florida and the Plaintiff has failed to specifically identify any witnesses, this factor weighs in favor of transfer.

## 4. All other practical problems that make trial of a case easy, expeditious and inexpensive

The fourth factor considers all other practical problems that make trial of a case easy, expeditious, and inexpensive. The Parties do not raise any other practical problems. Therefore, this factor is neutral.

## 5. The administrative difficulties flowing from court congestion

The fifth factor considers the speed at which a district can bring a case to trial. *See Healthpoint, Ltd. v. Derma Scis., Inc.*, 939 F. Supp. 2d 680, 693 (W.D. Tex. 2013) ("this factor favors a district that can bring a case to trial faster.") (quoting *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 871 (E.D. Tex. 2012)). In the Western District of Texas, the median time interval from a case's filing date to beginning trial date was 29.5 months during a 12-month period ending March 31, 2024. *Table T-3—Trials Federal Judicial Caseload Statistics*, United States Courts (March 31, 2024), https://www.uscourts.gov/statistics/table/t-3/federal-judicial-caseload-statistics/2024/03/31. In the Middle District of Florida, the median time was 29.7 in the same period. *Id.* This Court is unaware of any administrative difficulties that could

arise from transferring or retaining the case. Therefore, based on the relatively similar median times to trial in both districts, this factor is neutral.

### 6. The local interest in having localized interests decided at home

The sixth factor analyzes the connection the court and the local community have with the facts of the case. This factor is informed by the Supreme Court's holding that determining disputes is a "burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09 (1947); *see Volkswagen I,* 371 F.3d at 206. Typically, in a patent case this factor "is neutral, 'because patent issues do not give rise to a local controversy or implicate local interests.'" *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.,* No. 6:15-CV-00091, 2016 WL 6909479, at \*5 (W.D. Tex. Jan. 28, 2016) (quoting *Human Genome Scis., Inc. v. Genentech, Inc.,* No. CA 11-082-LPS, 2011 WL 2911797 (D. Del. July 18, 2011)). The Plaintiff voluntarily dismissed the two defendants who reside in Texas, extinguishing any limited connection between the case and Texas. (*See* ECF Nos. 37, 41.) Since the only remaining defendant is a Florida resident and there are no significant connections between the Western District of Texas and the events that gave rise to the suit, the citizens of the Western District of Texas have no factual connection with the events of this case.[3] Therefore, the local interest factor favors transfer.

### 7. The familiarity of the forum with the law that will govern the case

The seventh factor considers the law that will govern the case. Neither party contends that either federal court is unfamiliar with the relevant law, patent law. Both the Middle District of

---

[3] The Plaintiff concedes in its joint motion to transfer venue that the former defendants that reside in Texas "no longer participate in the manufacture, use, import, sale, or offer for sale of the accused Sunsail Shade product." (ECF No. 46 at 2.)

Florida and the Western District of Texas are capable of deciding the issues and applying patent law in this case. Therefore, this factor is neutral.

8. **The avoidance of unnecessary problems of conflict of laws or in the application of foreign law**

The final factor analyzes whether transferring a case would avoid problems with conflict of laws or applying foreign law. There is no known conflict of laws or foreign law in this case. Therefore, this factor is neutral.

### IV.    Conclusion

This Court finds that the United States District Court for the Middle District of Florida, Jacksonville Division, is a more convenient forum than the Western District of Texas, Waco Division. Notably, every factor considered in this Court's analysis favors transfer or is neutral. This case should have been brought in the Middle District of Florida, therefore this Court is persuaded by the Parties' Joint Motion.

Accordingly, the Motion to Transfer Venue [ECF Nos. 32, 46] is **GRANTED**, and this case shall be transferred to the Middle District of Florida, Jacksonville Division.

SIGNED and ENTERED on this 4th day of December 2024.

ALIA MOSES
Chief United States District Judge